UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD LEVIN and MICHELLE LEVIN, | )<br>)<br>) Case No. 12 C 3941<br>) |
| Plaintiffs, | ) District Judge Edmond E. Chang<br>) |
| v. | ) Magistrate Judge Geraldine Soat Brown<br>) |
| MENARD, INC., and FIELD'S FIRE PROTECTION, INC., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is plaintiffs Ronald and Michelle Levin's motion to compel certain discovery, including the re-deposition of Travis Hoover, an insurance adjuster for Zurich North America ("Zurich"). (Pls.' Mot.) [Dkt 67.] Defendant Menard, Inc. ("Menard") opposes the motion (Def.'s Resp.) [dkt 69], and plaintiffs have replied (Pls.' Reply) [dkt 88]. For the following reasons, plaintiffs' motion is granted in part and denied in part.

### Background

Plaintiffs seek damages from Menard and Fields Fire Protection, Inc. ("Fields") for injuries Mr. Levin allegedly sustained when he slipped on water in a Menard's store in Matteson, Illinois, on June 28, 2010. (Second Am. Compl. ¶¶ 1, 12.) [Dkt 71.] Plaintiffs maintain that the water leaked from a spigot being repaired on the day of the incident by Fields employees. (*Id.* ¶¶ 11-12.)

1

Mr. Levin alleges that he reported the accident to Menard's customer-service personnel and later discovered that they had known about the leak for several hours. (*Id.* ¶ 14.)

Plaintiffs also allege that, shortly after Mr. Levin reported the accident, Menard's customer-service personnel photographed the area of the fall and the source of the water, and refused to let Mr. Levin take his own pictures of the accident site. (*Id.* ¶ 100-03.) The pictures of the scene are now missing, and questions about what happened to them are at the heart of plaintiffs' motion to compel. During discovery, Menard's employee Tammie Sarek testified in a deposition that she took the pictures with a digital camera and that store manager Donovan Burney then uploaded the photographs to a computer and sent them to Menard's insurance company, Zurich. (Pls.' Mot., Ex. 1, Dep. of Tammie Jo Sarek, at 73-74.) In contrast, according to Menard, Mr. Burney said that he did not send the photographs and thought Ms. Sarek did. (Def.'s Resp. at 3.)[1]

In August 2013, plaintiffs' counsel deposed Travis Hoover, one of two Zurich insurance adjusters assigned to this matter. (Def.'s Resp., Ex. 2, Dep. of Travis Hoover, at 4-6.) Mr. Hoover testified that Ms. Sarek told him about the photographs of water on the floor during his investigation of the accident and that he requested them from Menard's corporate office on July 13, 2010, but a corporate representative denied receiving any photographs. (*Id.* at 19-23.) Mr. Hoover said that he followed up with Ms. Sarek, who promised to send the photographs to corporate again. (*Id.* at 21.) Mr. Hoover stated that he then sent a follow-up email about the photographs to Menard's corporate representative on July 30, 2010, but never received the photographs. (*Id.* at 21-23.)

---

[1] Plaintiffs contest this reading of Mr. Burney's testimony, but the court cannot confirm either parties' interpretation because the parties have not included the transcript of Mr. Burney's deposition. Plaintiffs say that the transcript is still being prepared. (Pls.' Reply at 3-4 n. 2.) The exact content of Mr. Burney's testimony is not necessary to resolve this motion.

Throughout Mr. Hoover's deposition, counsel for Menard objected that communications between Menard's employees and the insurance company were privileged. (*Id.* at 11-21.) Based on that objection, Menard's counsel directed Mr. Hoover not to answer a general question about what he was told by Menard's employees when he asked about the facts of the claim. (*Id.* at 11-12.) Counsel did, however, allow Mr. Hoover to answer questions about his conversations with Menard's employees with respect to the disputed photographs, though counsel repeatedly confirmed that he was not otherwise waiving the insurer-insured privilege. (*Id.* at 15, 19.) Menard's counsel claimed to represent both Zurich and Menard in this litigation. (*Id.* at 12.)

In addition to directing Mr. Hoover not to answer certain questions, Menard refused to produce claim notes, photographs, and electronic communications exchanged between Zurich and Menard on the basis that they are privileged and that plaintiffs' requests for production were vague and overbroad. (Pls.' Mot., Ex. 7 ¶¶ 7, 15; Ex. 9 ¶ 6.) Menard's response to plaintiffs' request for records asserts privilege as to four specific documents: (1) a one-page "Notice of Occurrence/Claim" that a Zurich employee drafted on June 28, 2010, based on information from Ms. Sarek; (2) a three-page document of "Care Center Notes" that a Zurich employee drafted on June 28, 2010, based on information from Ms. Sarek; (3) a two-page "Claim Reporting Guide" that Ms. Sarek drafted on June 28, 2010, and submitted to Zurich; and (4) claim notes based on communications with Menard's managers and defense counsel that were entered into an electronic database that Zurich maintains. (Pls.' Mot., Ex. 7 ¶ 15.)[2]

---

[2] In its response to plaintiffs' production requests, Menard stated that these documents are also covered by work-product protection in addition to insurer-insured privilege. But Menard did not argue on behalf of its assertion of work-product protection in its response to plaintiffs' motion to compel, so the court will not address it.

Around the same time, on August 12, 2013, plaintiffs' attorney issued a Notice of Deposition under Fed. R. Civ. P. 30(b)(6) for a Menard's representative who could testify about the company's document retention policies and computer and data systems. (Pls.' Mot., Ex. 6.) On September 3, 2013, two days before the deposition was set to occur, Menard offered Bryan Araque, who had been the general manager of the Matteson store since July 2011, as a representative to discuss general policies at his store. (Pls.' Mot., Ex. 10.) Menard objected, however, to producing a representative to address Menard's overall computer and data systems, challenging that topic area as vague and overbroad. (*Id.*) Mr. Araque was deposed on September 5, 2013, and testified that the information on the hard drives of the computers at the Matteson store had been put on disks and sent to Menard's corporate office in April and May of 2013, where they were erased. (Pls.' Reply, Ex. 12, Dep. of Bryan Araque.) Mr. Araque also stated, however, that he did not have specific knowledge about how Menard's computer and data systems operate or the corporate office's retention policy for electronic information. (*Id.* at 45, 49, 51-52.) Plaintiffs' attorney says that he tried to confer with Menard's counsel about its objections after Mr. Araque's deposition, but Menard's attorney refused to discuss the matter. (Pls.' Mot. ¶ 24.)

On September 10, 2013, plaintiffs moved to compel the production of all field notes and insurances files relating to their claims, and the re-deposition of Mr. Hoover with instructions that Menard's counsel not claim to represent or assert attorney-client privilege regarding Zurich. (Pls.' Mot. ¶ 9.) Plaintiffs also argued Menard had unreasonably delayed the litigation by (1) not producing a reasonably knowledgeable person to discuss the matters described in the 30(b)(6) notice, (2) erroneously asserting attorney-client privilege, and (3) improperly refusing plaintiffs' requests for production. (*Id.* ¶ 27.) Plaintiffs challenged Menard's counsel's assertion of the insurer-insured

4

privilege, an offshoot of the attorney-client privilege under Illinois law, on the basis an attorney representing both Menard and Zurich has a conflict of interest. (*Id.* ¶ 9.) (The parties agree that state law governs the assertion of privilege. Fed. R. Evid. 501.) Even if the privilege applied, plaintiffs contended, it was waived when Menard put the communications at issue by destroying the photographs. (*Id.* ¶¶ 13-19.)

Menard responded, defending its actions during discovery. First, it argued that it had properly asserted, and did not waive, the insurer-insured privilege under Illinois law. (Def.'s Resp. ¶¶ 19-42.) Menard also contended that there is no conflict of interest in its attorney representing both Menard and Zurich because Illinois law allows an attorney to represent an insured and its primary insurer if hired to represent the insured in litigation. (*Id.* ¶¶ 43-53.) Additionally, Menard defended its refusal to produce a Rule 30(b)(6) representative regarding computer and data systems by arguing that plaintiffs' request was overbroad, asserting that "there is no evidence that the photographs taken by Tammie Sarek ever left the digital camera in the Matteson Menard store." (*Id.* ¶¶ 56-58.) Finally, Menard argued that sanctions would be inappropriate because it was substantially justified in asserting privilege and plaintiffs' attorney did not properly confer before moving to compel. (*Id.* ¶¶ 62-65.)

On September 12, 2013, plaintiffs filed a second amended complaint adding a count of spoliation of evidence. (Second Am. Compl. ¶¶ 96-114.) In the added claim, plaintiffs allege that Menard breached its duty to preserve the pictures its employee took of the scene of the accident. (*Id.* ¶¶ 113-14.) Plaintiffs contend that the loss of these pictures, combined with Menard's employees' refusal to let Mr. Levin take his own pictures, has prevented them from proving the size and source of the water. (*Id.* ¶ 108.)

5

On September 13, 2013, at the parties' request, the court deferred further briefing on the motion to compel and struck the fact discovery cutoff so that the parties could focus on gathering evidence related to medical expenses and lost wages for the purpose of potentially settling this case. [Dkt 72.] On May 9, 2014, the court reinstated briefing after the parties were not able to reach a settlement. [Dkt 85, 86.] Plaintiffs then filed their reply on May 28, 2014.

## Discussion

### I. The Insurer-Insured Privilege

*Application of the Privilege*

The primary issue raised in plaintiffs' motion to compel is whether Menard waived the insurer-insured privilege as to its employees' communications with Zurich. (Pls.' Mot. at 5.) Plaintiffs' reply revealed, however, an underlying factual dispute regarding what plaintiffs' contend is a threshold issue to Menard's assertion of privilege: whether Zurich is a primary or excess insurer for Menard.

Menard asserts in its response that Zurich has a duty to defend Menard as its primary insurer. (Def.'s Resp. ¶¶ 28, 48.) Indeed, under Illinois law, a primary insurer—one providing coverages that "attaches immediately upon the happening of the occurrence or accident that exposes the insured to potential liability"—must "defend an action against an insured when the complaint in that action sets forth allegations which bring the claim potentially within the coverage of the insurance policy." *Nat'l Union Ins. Co. v. Dowd & Dowd, P.C.*, 2 F. Supp. 2d 1013, 1017-18 (N.D. Ill. 1998) (quotations omitted). Illinois law extends the attorney-client privilege to communications by the insured to the insurer where the communication is made for the dominant purpose of transmitting

it to an attorney for the protection of the interests of the insured. *Holland v. Schwan's Home Serv., Inc.*, 992 N.E.2d 43, 85 (Ill. App. 2013). Plaintiffs argue, however, that Menard did not provide evidentiary support for its assertion that Zurich was its primary insurer. (Pls.' Reply at 7-8.) Without that support, the court could not rule out that Zurich might be an excess insurer, *i.e.*, its coverage did not attach "until a predetermined amount of primary insurance is exhausted." *Nat'l Union*, 2 F. Supp. 2d at 1018. Plaintiffs argue that because an excess insurer does not have an obligation to defend, the insurer-insured privilege cannot apply. Additionally, plaintiffs contend, if Zurich is an excess carrier, Menard's attorney could not represent both Menard and Zurich, citing *Nat'l Union*, 2 F. Supp. 2d at 1018 (stating that "unlike a primary insurer, an excess insurer has no direct relationship with the attorney retained to defend an action against the insured"). (Pls.' Reply at 7-8.)[3]

None of the cases cited by plaintiffs expressly hold that the insurer-insured privilege does not extend to an insured's communications with an excess carrier, nor do they say that the same attorney cannot represent an excess carrier and the insured in responding to the underlying claim. It is not, however, necessary to reach those questions here because the facts as ultimately developed show that Zurich is Menard's primary insurer. Because Menard is the party asserting the insurer-insured privilege, it bears the burden of presenting evidence to establish the privilege. *See Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 257 (Ill. 1982). Thus, in response to the concerns raised by plaintiffs, the court ordered Menard to file a copy of the Declaration of Insurance that it

---

[3] In *Nat'l Union*, the district court predicted that the Illinois Supreme Court would not permit an excess insurer to assert a malpractice action on its own behalf against the insured's attorney, but would permit the excess insurer to be subrogated to the insured's malpractice claim. *Nat'l Union*, 2 F. Supp.2d at 1027.

7

had produced during discovery and a copy of its insurance policy with Zurich. (Order, May 30, 2014.) [Dkt 90.]

On June 3, 2014, Menard provided copies of the requested documents. [Dkt 91.] The submitted insurance policy includes a provision outlining Zurich's duty to defend Menard in the event of a civil lawsuit seeking damages for personal injury. (*Id.*, Ex. 1, at 22.) The policy also describes the insurance as primary insurance, unless the loss incurred falls under certain exclusions that do not appear to be applicable here. (*Id.* at 28.) Based on these documents, Menard has met its burden of demonstrating that Zurich has a duty to defend it as its primary insurer in regard to this litigation. Thus, Menard's attorney may properly represent Zurich and Menard as part of a tripartite relationship, and the insurer-insured privilege attaches to communications between Zurich and Menard's employees.

*Waiver of the Privilege*

Plaintiffs also argue that, if the privilege applies, Menard has waived it. (Pls.' Reply at 6-7.) As plaintiffs explain, Illinois courts recognize express and implied waivers of privilege. *Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 981 N.E.2d 345, 365 (Ill. 2012). Express waiver occurs when a client voluntarily testifies about privileged communications, expressly agrees to waive the privilege, or fails to assert the privilege when privileged information is requested. *Id.* Waiver is implied when a party asserts claims or defenses that put the privileged communications at issue in the litigation. *Id.* In interpreting privilege, Illinois courts "adhere to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991).

The court agrees with the plaintiffs that Menard waived the privilege in regard to communications between Menard's employees and Zurich about the missing photographs. Menard's employee, Ms. Sarek, testified that the missing photographs had been sent to Zurich, placing communications surrounding the transmission of those photographs at issue in this litigation. Moreover, counsel for Menard allowed Mr. Hoover to answer whether he asked Menard's employees if there were photographs taken and to describe his conversations with Ms. Sarek about the pictures. (Hoover Dep. at 15 ("[W]ith respect to the photographs, I'll allow him to answer that. I'm not waiving any other privilege with respect to Zurich."); *id.* at 19 ("I'll allow him to answer those questions with respect to conversations between Zurich and Menard's strictly limited to the issue of the photographs which is the subject in dispute.")). By allowing a representative of Zurich to voluntarily testify about his conversations with Menard's employees about the pictures, Menard waived the privilege in regard to those communications.[4]

A waiver as to some insurer-insured communications, however, is not a waiver as to all communications. When a disclosure made in a federal proceeding waives privilege, the waiver extends to undisclosed communications or information only if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and

---

[4] A decision from this district suggests that Fed. R. Evid. 502(b), rather than state law, governs whether a disclosure in a federal proceeding waives the attorney-client privilege in diversity cases. *See Sidney I. v. Focused Retail Property I, LLC*, 274 F.R.D. 212, 215 (N.D. Ill. 2011); *but see Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL 2637936 at *8 (N.D. Ill. June 12, 2013) (applying Illinois law regarding waiver); *Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 529 (N.D. Ill. 2011) (same). Under Rule 502(b), inadvertent disclosure of privileged information in a federal proceeding does not waive privilege if the privilege holder took reasonable steps to prevent disclosure and to rectify the error. Neither side contends that this rule applies to Menard's disclosures in this case. To the extent that Rule 502(b) governs, it does not protect the communications about the pictures because, as discussed, Menard's disclosure of the content of those communications was not inadvertent.

9

(3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). Rule 502 "applies even if state law provides the rule of decision." Fed. R. Evid. 502(f). Here, Menard's counsel repeatedly invoked the privilege in regard to communications that do not relate to the missing pictures, and disclosure of further communications between Zurich and Menard's staff is not necessary to understand the communications about the pictures. (*See* Hoover Dep. at 11-12, 15, 19, 21.) Moreover, requiring disclosure of communications regarding Menard's potential liability in this circumstance would undermine the privilege's purpose of encouraging full and frank consultation between insurers and insured. *Waste Management*, 579 N.E.2d at 326-27. Accordingly, communications unrelated to the photographs are privileged.

Based on that understanding, plaintiffs are not entitled to re-depose Mr. Hoover. Mr. Hoover already answered plaintiffs' questions about his communications with Ms. Sarek and Menard's corporate office about the missing pictures. (Hoover Dep. 21-23.) Further, Mr. Hoover confirmed during his deposition that he did not do any other follow up investigations to locate the pictures. (*Id.* at 23.) For those reasons, the court denies plaintiffs' request to re-depose Mr. Hoover.

As for the documents that Menard has refused to produce, it is impossible for the court to determine whether they are related to the missing photographs without reviewing them *in camera*. Three of the documents were drafted based on information from Ms. Sarek, so there may be discussion about the photographs in those documents, and that information would fall under the scope of Menard's waiver of privilege. Thus, Menard is instructed to submit copies of the documents listed in paragraphs 4 and 15 of exhibit 7 to plaintiffs' motion to compel—including the

Notice of Occurrence, Care Center Notes, and the Claim Notes—for the court's *in camera* review.[5]

**II. Rule 30(b)(6) Representative**

Plaintiffs also argue that Menard violated Rule 30(b)(6) by producing a witness, Mr. Araque, who could not testify about matters listed in the deposition notice. (Pls.' Reply at 8-10.) In contrast, Menard argues that "discovery relating to the computer and data systems of Menard, Inc. is neither relevant nor likely to lead to admissible evidence" because "there is no evidence that the photographs taken by Tammie Sarek ever left the digital camera in the Matteson Menard store." (Def.'s Resp. ¶¶ 57-58.)

Plaintiffs dispute Menard's statement (Pls.' Reply at 9), and there is deposition testimony to support the contention that the photographs were, or should have been, sent to Menard's corporate office. Ms. Sarek stated that Mr. Burney, the store manager, uploaded the pictures onto a local computer and then sent them to the insurance company. (Sarek Dep. at 73-74.) Mr. Hoover testified that Ms. Sarek told him that the pictures would be sent to Menard's corporate office. (Hoover Dep. at 21.) Mr. Araque testified that the information on hard drives of the computers at the Matteson store was put on disks and given to the corporate office to be erased. (Araque Dep. at 54.)

Thus, contrary to Menard's assertions, there is some evidence to support plaintiffs' position that the pictures were uploaded to the store computer and sent to either the insurance company or Menard's corporate office. For that reason, testimony about the corporate office's retention policies and systems for storing electronic information are relevant, particularly to plaintiffs' allegation of

---

[5] It appears that the two-page Claim Reporting Guide submitted by Ms. Sarek on June 28, 2010, has already been produced to plaintiffs as it was submitted to the court as an attachment to their reply. (Pls.' Reply, Ex. 11.)

spoilation. Accordingly, plaintiffs' request that Menard produce a corporate representative who can testify about those matters is granted.

**III. Sanctions and Other Relief**

Plaintiffs request sanctions for Menard's failure to produce discoverable information. (Pls.' Mot. at 1; Pls.' Reply at 10.) Generally, when a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Expenses will not be awarded, however, if the movant did not first try to resolve the dispute without court action, the opposing party's actions were "substantially justified," or the award would be unjust. *Id.*

The court declines to recommend sanctions at this time.[6] Although the court concludes that Menard waived the insurer-insured privilege as to communications about the missing photographs, the company's assertion of that privilege was not baseless because the privilege continues to protect communications unrelated to the pictures. *See Babych v. Psychiatric Solutions, Inc.*, 271 F. R. D. 603, 611 (N.D. Ill. 2010) (refusing to impose sanctions when unsuccessful objections to privilege were substantially justified). As for Menard's failure to produce a suitable representative, the court is not convinced that plaintiffs' counsel did all that it could to resolve that dispute before bringing its motion. Granted, Menard did not notify plaintiffs' counsel of its objections to the scope of the deposition until two days before it occurred, but plaintiffs' counsel then attempted to discuss

---

[6] As this court has noted before, the Seventh Circuit has yet to address squarely whether a magistrate judge has authority to impose expenses under Rule 37(a)(5). *Cardenas v. Grozdic*, No. 12 C 292, 2013 WL 4080652 at *3 n. 2 (N.D. Ill. Aug. 13, 2013).

Menard's objections in the middle of Mr. Araque's deposition and at the end of the deposition while Mr. Araque was waiting. (Araque Dep. at 50-52; Pls.' Reply, Ex. 14.) This tactic was not conducive to resolving the parties' differences. Menard's counsel offered to discuss the matter further by telephone, but there is no record of that discussion taking place before plaintiffs filed their motion five days later. Because each party appears to have had a hand to play in failing to resolve the Rule 30(b)(6) issue without court action, plaintiffs' request for sanctions is denied.

Finally, plaintiffs mention in their reply that there is a remaining question about whether Menard "should be barred from using any subsequently discovered photographic evidence of the site of the incident, barred from offering testimony regarding a description of the site of the incident, and permitting the Plaintiff to offer Illinois Pattern Jury Instruction 1.5." (Pls.' Reply at 2.) That question, however, is not discussed further in plaintiffs' motion or reply and would be premature to address as part of the motion to compel, so the court will not rule on it at this time.

## Conclusion

Accordingly, plaintiffs' motion to compel is granted in part and denied in part as set forth in this order. Menard shall submit the documents for the court's *in camera* review, as discussed in this order, by June 17, 2014.

*Geraldine Soat Brown*
_____
Geraldine Soat Brown
United States Magistrate Judge

**DATE:** June 10, 2014